OPINION
On October 13, 1996, appellant, Saundra M. Miracle, was charged with driving under the influence in violation of R.C.4511.19(A)(1) and (A)(3).
On October 18, 1996, appellant filed a motion to suppress her breath test results. A hearing was held on December 5, 1996. By judgment entry filed May 13, 1997, the trial court denied said motion.
On July 22, 1997, appellant pled no contest. By judgment entry filed same date and nunc pro tunc judgment entry filed September 2, 1997, the trial court found appellant guilty of R.C.4511.19(A)(3) and sentenced appellant to ten days in jail, credit for three days and seven days suspended, and imposed a license suspension, a fine and probation.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignments of error are as follows:
I
 THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF THE BREATH TEST ADMINISTERED WHEN THE BREATH TESTING INSTRUMENT WAS CALIBRATED PURSUANT TO REGULATIONS OF THE OHIO DEPARTMENT OF HEALTH AND WHEN SUCH REGULATIONS ARE NOT REASONABLE, BUT ARE THE RESULT OF AN ABUSE OF DISCRETION BY THE DIRECTOR OF HEALTH.
II
 THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT APPELLANT'S MOTION TO SUPPRESS THE RESULTS OF THE BREATH TEST WHEN THE BREATH TESTING INSTRUMENT WAS NOT CALIBRATED IN CONFORMITY WITH THE REGULATIONS OF THE OHIO DEPARTMENT OF HEALTH.
 I, II
Appellant claims the trial court erred in denying her motion to suppress. We disagree.
Appellant was charged with violating R.C. 4511.19(A)(1) and (A)(3) after submitting to a BAC datamaster and testing .159. Appellant challenges the Ohio Department of Health's protocol in certifying calibration solutions and in approving the manufacturer's target concentration value. The thrust of appellant's challenge is to the allowable deviation standard (five percent) used by the Department of Health in verifying and certifying the manufacturer's target concentration value.
Pursuant to R.C. 3701.143, the Director of Health shall determine the techniques or methods for "chemically analyzing a person's blood, urine, breath or other bodily substance in order to ascertain the amount of alcohol * * * in the person's blood, urine, breath, or other bodily substance." To accomplish this task, the Department of Health has established a protocol under Ohio Administrative Code Chapter 3701. Ohio Adm. Code 3701:53-04(A) states as follows:
 (A) Approved evidential breath testing instruments shall be checked for calibration no less frequently than once every seven (7) days by a senior operator using a solution of ethyl alcohol approved by the Director of Health and using the calibration check list for the instrument being checked as set forth in the appendices A to G to this rule.
 (1) A calibration check of a breath testing instrument is valid when the result of the calibration check is at target value plus or minus five one thousandths (0.005) grams per two hundred ten (210) liters. * * *
In qualifying the batch of calibration solutions sub judice
(#96901), sixteen determinations were made (four test samples from each of four bottles). T. at 38-39. The average was determined from the results of the four tests from each of the four bottles. T. at 39. The mean is the average of the four tests from each bottle and the grand mean is the average of the four bottles. T. at 39. Appellant's expert, Dr. Alfred Staubus, testified the Department of Health's procedures and calculations were accurate, but the results did not agree with the manufacturer's target concentration value. T. at 40. The results differed by a factor of approximately one percent. T. at 41. Dr. Staubus opined the acceptable deviation standard should in fact be only plus or minus two percent of the target value rather than the Department of Health's plus or minus five percent of the stated value. T. at 42. Dr. Staubus's opinion was summarized as follows:
 Q So to summarize, Doctor, then it is your testimony that the — you're critical of the Department of Health not because of their laboratory procedures in analyzing this particular Batch but in their refusal to use their own results and their reliance on someone else's results?
 A That's correct. And especially, you know, if you had two equally reliable sets of numbers, then I could see where it'd be a tossup between the two. But in this case you have your own analysis where you know the reliability thereof versus a concentration you have no knowledge of the reliability.
T. at 47.
Dr. Staubus agreed the Department of Health's procedures are valid and their calculations are precise, but he disagreed with their policy in refusing to use their own results. T. at 39, 76. Dr. Staubus further agreed the Department of Health's procedures are "the scientifically accepted methodology." T. at 40.
Appellee's expert, Steve Wagner, Chief of Environmental Health and Toxicology for the Ohio Department of Health, testified as to the actual procedures established by the Department of Health. T. at 53-54. Four testing samples are taken from each of four bottles in a batch of calibration solutions. T. at 53. The amount of variation between each testing sample from each bottle tested has to be less than two and one-half percent. T. at 54. When quality control is measured against the manufacturer's target concentration value, the mean must be under 105 percent. T. at 55. If the grand mean value is within five percent of the manufacturer's target concentration value then the batch as a whole is approved. T. at 55. Mr. Wagner testified the purpose of the Department of Health's program "is to do a quality assurance of what the manufacturer has stated as the target, it's not to set a new target concentration." T. at 60.
The gravamen of appellant's argument is that the Department of Health's five percent deviation standard from the manufacturer's target concentration value can result in false negatives or false positives in situations where the results of an actual test are within the .095 to .105 range. If there is a five percent deviation, the results could be skewed .095 to 1.105 from a .100 reading. Dr. Staubus opined the Department of Health should not be qualifying the target concentration value from the manufacturer but should be using their own stated value to qualify the batch of calibration solutions. The Department of Health argues their role is to establish that the manufacturer's target concentration value is within five percent of their stated value. The Department of Health is not interested in the manufacturer's procedures but in qualifying the manufacturer's target concentration value.
The applicable law on the Department of Health's protocol on datamasters is set forth in State v. Vega (1984), 12 Ohio St.3d 185. In Vega at 190, the Supreme Court of Ohio held "an accused may not make a general attack upon the reliability and validity of the breath testing instrument." Further, "an accused is not denied his constitutional right to present a defense nor is the state relieved of its burden of proving guilt beyond a reasonable doubt where a trial judge does not permit expert testimony to attack the reliability of intoxilyzers in general." Id. at 186. While the Department of Health is granted authority to determine the techniques and methods for testing, the Department of Health may not abuse its discretion. An abuse of discretion has been defined as an unreasonable, arbitrary or unconscionable act.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
The question for this court to decide is whether the Department of Health's protocol constitutes an abuse of discretion. Dr. Staubus does not complain about the Department of Health's techniques or procedures nor does he dispute that the procedures are an accepted scientific method. The Department of Health qualifies a batch of calibration solutions by using its own procedures and affirms that the testing samples fall within the manufacturer's target concentration value. Once the Department of Health makes that quality assurance determination, it is not necessary to know the manufacturer's procedures. Further, the Department of Health's five percent deviation standard is not perse unreasonable or unconscionable. The Department of Health has made a determination that in at least ninety-five percent of all datamaster tests, the readings will be on target. Dr. Staubus argues the percentage should be higher, ninety-eight or ninety-nine percent. Both approaches accept the fact that to be on target one hundred percent is not possible. Once there is the acceptance of less than perfect testing, the argument between ninety-five and ninety-eight percent correctness does not rise to the level of an abuse of discretion. Ninety-five percent is in substantial compliance with the rules.
Assignments of Error I and II are denied.
The judgment of the Mount Vernon Municipal Court for Knox County, Ohio is hereby affirmed.
By Farmer, P.J., Gwin, J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Mount Vernon Municipal Court of Knox County, Ohio is affirmed.